# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

LINDE GAS LLC,

_____PLAINTIFF,

vs.                                              CASE NO. CV 05-J-1803-NE
                                                             (LEAD)

CHARLES G. POSEY,

DEFENDANT.

_____

VALLEY AIR SUPPLY,

Plaintiff,

vs.                                              CASE NO. CV 05-J-2046-NE
                                                       (CONSOLIDATED)

LINDE GAS, et al.,

Defendants.

## MEMORANDUM OPINION

Pending before the court are cross-motions for summary judgment.  Charles G.

Posey[1] ("Posey") filed a motion for summary judgment (doc. 71), a brief in support

of motion for summary judgment (doc. 72), and evidentiary submissions in support

of summary judgment (docs. 76-77).   Linde Gas LLC ("Linde"), Dave Carter

("Carter") and David Browning ("Browning") filed a motion for summary judgment

(doc. 73),  evidence in support of their motion (doc. 74) and a brief in support of their

motion (doc. 75).  Linde, Carter and Browning filed evidentiary submissions (doc.

---

[1] Posey's full name is Charles Gregory Posey.  He uses the name Gregg rather than
Charles.  Posey depo. at 5.

80) and a brief (doc. 81) in opposition to Posey's motion and Posey filed an opposition (doc. 82) and evidence (docs. 83 and 84) in response to Linde's motion. Thereafter, Linde, Carter and Browning filed a reply to Posey's opposition (doc. 85) and Posey filed a reply to Linde's opposition (doc. 86).   Linde also submitted supplementary evidence (docs. 87, exhibit 1 and 88).   Having considered the pleadings and evidence as well as the foregoing submissions, the court finds as follows:

## FACTUAL BACKGROUND

In 1994 Holox, Inc., a predecessor of Linde, purchased Welding Equipment & Rental Service, Inc., which was owned by Posey.  Posey depo. at 17-19, 24-26, 31; exhibit 1 to Posey depo (doc. 80).   Upon the purchase, Posey became a branch manager for Holox, Ltd.  Exhibit 2 to Posey depo. (doc. 80).  Both companies were in the business of selling welding supplies, equipment and gases.  Posey depo. at 19.

At the time he was hired by Holox, Posey signed a non-competition agreement with a five year term.  Posey depo. at 32; exhibit 3 to Posey's evidentiary submissions (doc. 76).  After the purchase by Holox, Holox told Posey to find another location for the business and buy it, and Holox then leased the property from Posey.  Posey depo. at 37-38; H.R. 21: Blount depo. at 167-168; exhibit 3 to Posey depo. (doc. 80).  Posey and Holox entered a lease agreement in May 1995 with a five year term and an option

to renew for an additional five years.  Posey depo. at 39-40; Exhibit 2 to Posey's evidentiary submissions (doc. 76); H.R. 19.  At the beginning of 2004, Holox merged with Linde and Linde assumed the lease.  Posey depo. at 54.  That lease agreement, through the renewal, expired June 30, 2005.  Exhibit 2 to Posey's evidentiary submissions (doc. 76).

Linde claims that in early 2005 Posey entered into negotiations both with Linde and Linde's competitors to lease the property in question.  Blount depo. at 170.  Posey denies this.  H.R. 56.  Posey stated that Mark Melnick, corporate counsel for Linde,  asked him in early 2005 about extending the lease beyond June 2005.  Posey depo. at 61; Carter depo. at 27.  Posey informed Linde he did not know if he wanted to do that because he was unhappy with Linde's management.  Posey depo. at 61; Carter depo. at 27-28.

On January 13, 2004, Posey entered an Employee Confidentiality Agreement ("Agreement") with Linde.  Exhibit 2 to Complaint; Posey depo. at 56.  Linde filed this action against Posey on August 25, 2005, based on alleged breaches of that agreement as well as the tort of intentional interference with contract.   The Agreement, signed by Posey on January 13, 2004, states in relevant part as follows:

> 1. **Disclosure of Information:** The Employee agrees that during or after his/her term of employment, he/she will not disclose directly or indirectly any information, data or facts relating in any manner to

LINDE'S business ... and the Employee will at no time either during or after his/her employment disclose any confidential or secret information in any manner relating to the business of LINDE obtained by him/her as a result of his/her employment with LINDE....

5.    **Non-Competition During Employment**: During his/her employment with LINDE, Employee will not, in the United States or in any foreign country in which LINDE is then marketing its products or services, directly or indirectly, engage in or own or control any interest in ... or act as an officer, director or employee of, or consultant or advisor to any firm, corporation or institution directly or indirectly in competition with or engaged in a business substantially similar to that of LINDE.

6.    **Non-Solicitation of Employees**: For a period of one year after Employee's employment with LINDE is terminated by LINDE or by Employee for any reason, with or without cause, Employee will not recruit or hire any employee of LINDE, or otherwise induce such employee to leave the employment of LINDE, to become an employee of or otherwise be associated with Employee or any company or business with which Employee is or may become associated.

Exhibit 2 to Complaint.

After Linde took over Holox, Posey became unhappy with numerous aspects of his employment.  Posey depo. at 61-62, 98-99, 109; H.R. 22-24.  Linde sent Posey to Atlanta, Georgia, to meet with Dave Carter.[2]  Posey depo. at 54-65; H.R. 25. Carter told Posey he wanted to solve the problems and renew the lease.  Posey depo. at 66.  Posey asked Carter whether he could be a distributor for Linde rather than an

---

[2]Carter is Vice President of Gas and Welding Area South for Linde.  Carter depo. at 6.

4

employee, and Carter responded that Linde was not interested in that arrangement. Posey depo. at 67-68; Carter depo. at 34-36; H.R. 25-26.

At their next meeting, Carter told Posey that Linde wanted to purchase the property under the purchase option in the lease. Posey depo. at 72; Carter depo. at 41-42. He also wanted Posey to sign a noncompete agreement and remain with Linde. Posey depo. at 72-73. Linde wanted the noncompete agreement because Posey "was leveraging his business and the lease against us, so we were looking to protect our interests." Carter depo. at 40. *See also* H.R. 32, 55. The noncompete agreement included a proposed salary increase for Posey of $10,000.00 and a $10,000.00 signing bonus. Carter depo. at 62-63; Blount depo. at 139; H.R. 60.

In June 2005 Carter asked Posey to renew the lease long enough for Linde to purchase the building. Posey depo. at 94. Posey responded he would consider an extension if Linde would consider Posey becoming a distributor, which Carter said they would consider. Posey depo. at 94-95, 179-180; H.R. 27-28. Carter denies ever giving Posey a reason to believe Linde would give him a distributorship. Carter depo. at 54-55. The lease was extended to the end of September 2005. Exhibit 7 to Posey's evidence in support of summary judgment (doc. 77); H.R. 32. The purchase by Linde never occurred because of environmental issues with the property. Posey depo. at 76; Blount depo. at 199-200.

Linde sent Posey to Cleveland, Ohio to meet with Pat Murphy.[3]  Posey depo. at 96.  Murphy encouraged Posey to remain with Linde as an employee.  *Id*., at 101, 126-127.  Upon his return from Cleveland, Carter told Posey that if he did not sign the noncompete agreement he would have to resign or be fired.  *Id*., at 103-104; H.R. 28-29, 53, 61.  Carter denies making this threat.  Carter depo. at 82.  Carter told him he could think about the noncompete agreement for one more day.  Posey depo. at 104-105; Carter depo. at 80.  The following day, July 20, 2005, Posey was placed on administrative leave for refusing to sign.  Posey depo. at 105, 107; Carter depo. at 80; H.R. 29.  On July 25, 2005, Posey resigned.  Posey depo. at 107; Carter depo. at 85.

Linde asserts both that Posey entered into negotiations both with Linde and Linde's competitors to lease the property in question, and that Posey also was negotiating a position for himself and others with Linde's competitors and that in the course of these negotiations, provided competitors with confidential business information about Linde.  Amended Complaint, ¶ 31-32; Carter depo. at 43-44. Posey denies this.  H.R. 62.  Based on these allegations, Linde amended its complaint to include claims for breach of duty of loyalty and breach of the non-disclosure provisions of the Employee Confidentiality Agreement.

---

[3]During the relevant time, Murphy was Carter's immediate supervisor.  Carter depo. at 10.

After Posey resigned, he and Freeman Medley began Valley Air Supply, Inc. ("Valley"), which is a competitor of Linde.[4]  Posey depo. at 132, 137, 150-151, 220; H.R. 36, 66.  Valley was incorporated on July 29, 2005.  Posey depo. at 150; exhibit 6 to Posey depo. (doc. 80).  They began business on August 1, 2005, with Posey and his wife Lisa as the only employees.  Posey depo. at 151.  Posey admits that when Valley started, all of his customers had been customers of Linde.  *Id*., at 153.

Linde asserts Posey lured Linde employees away from Linde to work for Valley, in violation of the Agreement.[5]  Complaint, ¶¶ 13-16.  Posey claims that Linde did not return the leased premises to him in a reasonable condition.  Counterclaim (doc. 44), ¶ 13.  Posey also states counterclaims for breach of contract and violation of the Sales Representative's Commission Contracts Act.[6]

Valley filed a separate lawsuit against Linde, Browning[7] and Carter claiming intentional interference with business relations, asserting that Linde contacted

---

[4]Posey and Medley first discussed beginning this business in June 2005 based on Posey's belief that Linde was considering his offer of becoming a distributor.  Posey depo. at 142.  After Posey was placed on administrative leave, he talked to Medley about going into the welding supply business. *Id*., at 144.

[5]The employees at issue, Steve Elliott and David Griffin, intervened in this action (docs. 24 and 31).  Their claims were later settled and all claims by and/or against them have been dismissed (docs. 78-79).  Griffin testified that he had intervened in this action because he should be able to work where he wanted and did not have a noncompete agreement with Linde.  Griffin depo. at 108.

[6]Posey concedes that Linde is entitled to judgment in its favor on his claims for breach of contract and Sales Representative's Commission Contracts Act.

[7]During the relevant time, Browning was manager of marketing communications and hardware production management. Browning depo. at 7.  He reported to Carter.  *Id.,* at 12.

Valley's potential suppliers and urged them not to do business with Valley.  That action was consolidated with the current litigation (doc. 22).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of  the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The nonmovant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III.  LEGAL ANALYSIS

**A. Posey's motion for summary judgment on Linde's claims against Posey**:

*1.  Breach of Contract not to Solicit Employees*

The court previously found that pursuant to the non-solicit clause of the Agreement:

> ... employees of plaintiff, upon their separation from employment, can go work anywhere they want, they simply cannot recruit or hire current employees of the plaintiff to come work with them. This in no way restrains the business opportunity of any employee, it merely prevents them from enticing away other employees. *See e.g.*, *Nobles-Hamilton v. Thompson,* 883 So.2d 1247, 1249 (Ala.Civ.App. 2003), citing *Parker v. EBSCO Indus., Inc*., 282 Ala. 98, 100-01, 209 So.2d 383, 384-85 (1968) (affirming the enforcement of a noncompetition agreement that did not contain a specific geographical limitation; the trial court ordered that the former employee not solicit established customers of the

9

employer or induce other employees of the employer to leave their employment for a one-year period).

However, this is what Posey is accused of doing – getting Elliott and Griffin to come work for his new company.  Complaint, ¶¶ 11-15.  In other words, Elliott and Griffin are not prohibited from whom they can work, but Posey is contractually bound not to entice them away from plaintiff.

Order of September 2, 2005 (doc. 13), at 6-7.  The court found that a claim for breach of a non-solicitation agreement without a noncompete clause was valid under Alabama law.  Because the parties agreed that Ohio law would govern the Agreement, and because the claim was viable under Alabama law, the court concluded that the contract would be governed by Ohio law.  Order of September 2, 2005 at 7.  The court further found that the Agreement was valid under Ohio law.[8]  *Id*., at 7-8.

The non-solicitation clause concerns only the solicitation of current employees of Linde.  At the August 30, 2005, hearing, Posey testified that he had not recruited,

---

[8]While Linde and Posey devote substantial amounts of their briefs to the issue of whether the non-solicitation clause is valid and enforceable, the court has already decided this issue.  The issue before the court on a motion for summary judgment is whether the evidence demonstrates that there is a genuine issue of material fact as to whether Posey's actions violated this clause in the Agreement.

Having again reviewed *Crown Castle USA, Inc. v. Howell Engineering and Surveying, Inc.*, 2005 WL 1994256 (Ala.Civ.App.2005), including the Opinion Overruling Rehearing of January 20, 2006, the court is still of the opinion that *Crown Castle* is distinguishable from the facts before this court.  In *Crown Castle*, the no solicitation/no hire agreement was between two employers.  It limited an employee's ability to leave his or her present position and be hired by another employer, even though the employee had not agreed to any such limitation through a noncompete agreement.  The employers' agreement was therefore found to be in violation of §8-1-1, *Alabama Code 1975*, as amended.  Here, the non-solicitation provision keeps a present employee from raiding its present employer's staff.  It does not restrict the employees of Linde from leaving Linde and getting hired anywhere else they desire.  Linde has not argued that Griffin and Elliott could not work for Valley.  Rather, the issue is whether Posey violated his non-solicitation agreement by luring them away from Linde while Griffin and Elliott were still employed there.  Under these facts, there is no violation of Ala.Code §8-1-1.

10

induced, or hired any Linde employees to work for him.  H.R. at 35.  Under the plain language of the non-solicitation clause, the minute an individual leaves his employment with Linde, that individual is outside the prohibition.  Thus, the court has considered the evidence before it as it relates to the time prior to Griffin and Elliott resigning.  The court finds a genuine issue of material fact exists concerning whether Posey solicited Linde employees.

Linde asserts that Griffin was really working for Valley prior to September 1, 2005, even though Posey and Griffin deny this.  *See e.g.*, H.R. 118; Griffin depo. at 8.  Griffin asserts he was driving a truck for Valley before September 1 to help as a friend and not for a paycheck.  Posey depo. at 162-164; Griffin depo. at 8-9.  Elliott alleges he also "helped around the place," but was not working for Valley until September 1, 2005.  Posey depo. at 182, 191; Elliott depo. at 39-40; H.R. 49, 128-129; Medley depo. at 71.  However, the evidence shows that Griffin purchased a Ford F150 truck on behalf of Valley on August 15, 2005.  Exhibit 10 to Linde's evidence in opposition (doc. 80).  According to records from the dealership, Griffin was shopping for this truck on behalf of Valley on August 8, 2005, which is prior to the date he resigned from Linde.  *Id.*

Records subpoenaed from BlueCross BlueShield of Alabama show that Griffin and Elliot were listed as insureds on Valley's policy of insurance as of August 15,

2005.  Elliott was employed by Linde until August 19, 2005.  Elliott stated he left Linde because Alan Blount, regional manager for Linde, called him into the office on August 9, 2005, and wanted to know if Elliot was committed to staying with Linde.  Elliott depo. at 30; H.R. 91.  Elliott stated he did not know and Blount told him he had to commit to staying or quit by the next morning.  Elliott depo. at 30.  Elliott did not like being pushed into a decision, so he quit, effective August 19, 2005.  *Id.*, at 30-32, H.R. 89-92.  Elliott testified he had not been offered a job by Valley before this date.  Elliott depo. at 36; H.R. 92. Other records demonstrate that on August 19, 2005, Posey represented to Elliott & Associates Insurance Agency that he had a salesman hired and another employee starting Monday.  Exhibit 3 to Linde's evidence in opposition (doc. 80).

Devon King testified that Posey asked him to come to Valley Metal Fabricators, another business Posey and Medley own.  King depo. at 32-35.  Posey said he could not talk to King about a job, but Medley could.[9] King depo. at 34, 38; Posey depo. at 186-188.  Medley denies ever offering King a job.  H.R. 79-81.  Blount asserts that Posey is soliciting Linde employees in "a roundabout way.  What I understand is, from Willie, that he had a conversation with Freeman.  And Freeman

---

[9]Posey had originally hired King to work for him prior to the time Holox purchased Welding Equipment & Rental Service, Inc.  Posey depo. at 21.  King was promoted to the branch manager position after Posey left and is still employed with Linde.  Blount depo. at 120, 143.

told him if he needed a job, to come see him.  So that's, you know, kind of a roundabout way."  Blount depo. at 124.  *See also id.*, at 126.

Griffin spoke with Medley "because he was the one doing the hiring."  Griffin depo. at 11, 29, 32.  Griffin testified that Posey never offered him a job prior to his resignation from Linde.  H.R. 113-114; Griffin depo. at 130.  Medley told Griffin that Valley Air was not hiring on August 12, 2005, the day Griffin left Linde and first approached Valley about a job.  H.R. 71, 112-113; Medley depo. at 77.  Medley asserts he found out Griffin quit his job at Linde when Griffin came back to fill out an application the following week.  H.R. 73; Exhibit 8 to Medley depo. (doc. 80).  This was after the date Griffin's insurance coverage with Valley began.  *See* exhibit 11 to Linde's evidentiary submissions in opposition (doc. 80).

Elliott also knew to talk to Medley because Medley was in charge of hiring and he knew Posey had the non-solicitation agreement.  Elliott depo. at 41; H.R, 37, 69.  Medley testified he did not talk to Griffin or Elliott prior to each of them leaving Linde's employ.  H.R. 84.  Medley testified on August 31, 2005,  that he was not in a position to hire Griffin.  H.R. 74.  Griffin was hired by Valley the next day.  Similarly, Medley testified no offer had been made to Elliot as of August 31, 2005.  H.R. 76.  Elliott began work September 1, 2005.

13

Having considered the foregoing, and being of the opinion that genuine issues of material fact remain, the court shall deny Posey's motion for summary judgment on this count of Linde's complaint.

### 2. Breach of Contract not to Disclose Confidential Information

Posey argues that he is entitled to summary judgment on this claim because Linde has no evidence that Posey ever possessed or disclosed confidential information. Posey's brief in support of summary judgment, at 19. Linde argues that Posey had discussions with Linde's competitors while still employed at Linde. Because those competitors offered him raises and increased rent for the building, Posey must have revealed information regarding the identity of customers and the amounts he expected to sell to get those offers. Linde's brief in opposition at 21-22; Carter depo. at 90-91; Blount depo. at 170-172. Posey denies attempting to lease the space to Linde's competitors. H.R. 63.

Blount asserts that "[I]f Gregg went into business for hisself (sic), which he has, that to get people to back him, he would have to let them know how profitable he's been to talk somebody into investing money in his business, know what kind of sales he's been doing and how profitable he's been. Wouldn't you think?" Blount depo. at 175. However, Blount admits he has no personal knowledge of any such conversations. *Id.*, at 176. Posey testified he spoke with Medley about what the

14

business could potentially make, who their suppliers could be, and the kind of investment needed to get started.  Posey depo. at 146.  They also discussed which customers Posey could take with him.  *Id*., at 148.  Posey stated he also spoke with Airgas, J&M Cylinder and Nexair about becoming distributors for them during conversations he had with each of those companies checking prices on gases for Linde.  *Id.*, at 78-90; 116.  Posey told Carter he would like to be a distributor for Linde, or he could be a distributor for someone else.  *Id*., at 93.

Linde argues that Posey would have had confidential information, although Linde does not suggest that Posey took documentary information with him when he left outside of his memory.  Linde is unable to point to any specific document or information Posey disclosed.  Carter asserts that Posey had various customer information, although he did not see him leave with any information and Posey did not take any documents with him.  Carter depo. at 88-89.  Rather, Linde assumes that Posey took information because otherwise he would not have received favorable job offers.  The only information Carter accuses Posey of taking was information in Posey's head.  Carter depo. at 89-90.  *See also* Blount depo. at 178-179, 188-189.  However, Posey's experience and knowledge in the field is not "information" capable of being wrongfully disclosed.  An agent "is entitled to use general information concerning the method of business of the principal and the names of the customers

retained in his memory, if not acquired in violation of his duty as agent...." REST 2d AGEN § 396 (b).

The mere allegation that Posey must have used confidential information retained in his memory to receive favorable job offers from competitors, without more, is insufficient for Linde to avoid summary judgment. *See e.g., Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F.Supp.2d 1028, 1041 (N.D.Oh.2003) ("Alliance's suggestion of inevitable use of confidential information constitutes the full extent of its evidence on this claim and that is not enough to demonstrate a substantial likelihood of prevailing on this claim").

> A good and capable agent of the kind often controls a large patronage and enjoys a valuable good will which he may use or sell. If he should cease to represent one company, and engage to represent another, to the great disadvantage of the first, there is no law to prevent his doing so. Every one who employs an agent does so with the certain knowledge that his agency may terminate at any time, except in so far as it is restrained by contract, and that the agent may transfer himself, with all his information, skill and patronage, to another rival in business, or set up on his own account, in a competing line. Such persons are hired, often, in consideration of the trade that follows them, and this is legitimate, to the extent that it is fairly influenced.

*James A. Head & Co. v. Rolling* 265 Ala. 328, 341-342, 90 So.2d 828, 840 (Ala.1956).

Having considered the foregoing, the court is of the opinion that Posey is entitled to summary judgment in his favor on this count of Linde's complaint.

### 3.  Breach of Duty of Loyalty

Linde asserts that by disclosing confidential information and engaging in deliberate actions adverse to Linde's interest, Posey breached his duty of loyalty to Linde.  Linde argues:

> Posey purported to engage in negotiations with Linde regarding his continued employment and extension of the lease on the Muscle Shoals building.  However, the totality of Posey's conduct demonstrates that he never had any intention of remaining an employee of Linde.  Instead, his goal, which he achieved, was to kick Linde out of the facility and capture the business for himself in his newly formed corporation.

Linde's brief in opposition, at 23-24.  Carter states that Posey told him "he had spoken with the competition and that the competition has made offers..." Carter depo. at 90.  *See also* Blount depo. at 189.  However, Linde also acknowledges that Posey was free to compete in the marketplace at the conclusion of his employment.  Linde's brief in opposition, at 24.  As Posey was an at-will employee, he was also free to conclude his employment with Linde at any time. "Under Alabama law, an employment contract is generally terminable at will by either party, with or without cause or justification-for a good reason, a wrong reason, or no reason at all." *Wal-Mart Stores, Inc. v. Smitherman,* 872 So.2d 833, 838 (Ala.2003), citing *Culbreth v. Woodham Plumbing Co.,* 599 So.2d 1120, 1121 (Ala.1992).

17

As Posey had no obligation to remain employed by Linde, he could not have breached any duty owed Linde by leaving.  "Implicit in the 'employment-at-will' doctrine is the concept that an employee at will can be discharged, or, conversely, can terminate his employment, without prior notice. *Martin v. Tapley,* 360 So.2d 708 (Ala.1978).  The Alabama Supreme Court has held that the "employment-at-will" doctrine is not modified by an agent's fiduciary duty to his employer.  *Allied Supply Co., Inc. v. Brown,* 585 So.2d 33, 35 (Ala.1991).

> From the standpoint of the employer, it may seem unjust that a faithful employee for a number of years, who has learned the business and become almost a part of it, shall leave and engage himself in a competitive business; but the employer has no right to his continuance in service, no right to control his activities, no just objection that he engage competitively in a like business and make a career for himself, nor a right to the continued patronage of former patrons.  The employee has as much right to start a new business and endeavor to establish it as had his employer to start his business which has become established.

*James A. Head,* 265 Ala. at 342, 90 So.2d at 840.

When Posey began planning to open a business in competition with Linde is not relevant to this analysis.  Linde has not produced any evidence, as opposed to speculation, that Posey took **actions** adverse to Linde's interest until after he resigned.  *See James A. Head*, 265 Ala. at 343, 90 So.2d at 842 ("We do not find any evidence in the record where any one of the seventeen suppliers who changed their dealership from Head to the respondents was solicited by the respondents to do so

18

prior to Jan. 1, 1952.  It is undisputed that each supplier had the right to cancel their agreements with Head ...").

The court shall grant summary judgment in favor of Posey and against Linde on this count of Linde's complaint.

### 4.  Intentional Interference with Business Relations

Linde asserts that by hiring Linde employees, Posey interfered with Linde's relationship with those employees.  The Alabama Supreme Court has held that, "[t]o be actionable, interference with the employer-employee relationship must be an affirmative, intentional, knowing, malicious, unjustified or unlawful interference with the contractual rights." *James S. Kemper & Co. Southeast, Inc. v. Cox & Associates, Inc.* 434 So.2d 1380, 1386 (Ala.1983), citing  *Brown v. Chem Haulers, Inc.,* 402 So.2d 887 (Ala.1981); *Alcazar Amusement Co. v. Mudd & Colley Amusement Co.,* 204 Ala. 509, 86 So. 209 (1920). Such interference constitutes a tort for which the employer has an action against the third party. C. Gamble and O. Corley, *Alabama Law of Damages,* § 21-3 (1982)*.*

In reliance on the foregoing, the court previously determined that interference with the employer-employee relationship by a third party was a viable cause of action. Order of September 14, 2005 (doc. 13).  Posey argues that any action by him was within the "competitor's privilege."  Although Linde asserts that this argument is

19

against the prior ruling of this court, the issue of whether Posey's actions were within

the confines of this tort was not before the court at that time of its ruling on Posey's

motion to dismiss.  Linde further argues that Posey "did more than simply hire his

competitors (sic) employees .... he violated his own Employee Confidentiality

Agreement...."[10]  Linde's response in opposition, at 20.

In *Kemper*, 434 So.2d at 1387, relied on by Linde, the Alabama Supreme Court

held that the trial court erred in not allowing damages for losses as a result of a third-

party employer interfering with the employment contract of one of Kemper's

employees.  While *Kemper* is useful for setting forth the elements of the tort of

intentional interference with business relations in an employer-employee setting, it

is factually different in two significant ways.  First, the employee at issue had an

employment contract as opposed to being an at-will employee.  Second, third-party

employer defendant Cox was found to have intended that the employee breach his

covenant not to compete with Kemper.  In contrast, Posey did not have a non-compete

agreement with Linde.  In *Defco, Inc. v. Decatur Cylinder, Inc.*, 595 So.2d 1329,

1332 (Ala.1992), the court stated that "[w]ithout a showing that the employee had an

---

[10]Violation of his Agreement would not suffice to establish a factual basis for this tort.
"As a matter of law, a party to a contract or to a business relationship cannot be liable for tortious
interference with that contract or business relationship. *Watters v. Lawrence County,* 551 So.2d
1011, 1013 (Ala.,1989); *Lolley v. Howell,* 504 So.2d 253 (Ala.1987); *Hickman v. Winston
County Hospital Board,* 508 So.2d 237 (Ala.1987).

enforceable noncompetition agreement with the plaintiff or that the defendant did more than simply hire its competitor's employee, we see no basis for allowing an action for intentional interference in circumstances such as those presented in this case."

Griffin and Elliott were employees at-will. As such, they had the right to terminate their employment with Linde at any time. In *Defco*, the Alabama Supreme Court stated, "We have reviewed the cases on intentional interference with contractual or business relations, and no other Alabama case [other than *Kemper*] has been cited or been disclosed in our research in which it has been found actionable for the defendant to hire the plaintiff's employee, and certainly no such case in which the employee did not have an agreement not to compete with the plaintiff." *Defco*, 595 So.2d at 1331.

Having considered the foregoing and being of the opinion that Posey is entitled to summary judgment in his favor on this count of the complaint, the court shall so rule by separate Order.

## B.  Linde's motion for summary judgment on Posey's Counterclaims against Linde[11]

### 1. Posey's Counterclaim for breach of contract

### 2. Posey's counterclaim under the Alabama Sales Representative's Commission Contracts Act

Posey concedes that Linde is entitled to summary judgment in its favor on these two counts of Posey's counterclaim.  Posey's opposition to Linde's motion for summary judgment (doc. 82), at 1.  The court shall enter an appropriate order, granting judgment in favor of Linde on these claims.

## C.  Linde's motion for summary judgment on Valley's claim for intentional interference with business relations

Valley claims that Linde and its employees Carter and Browning intentionally interfered with Valley's business by contacting its suppliers and urging them not to do business with Valley.  Posey depo. at 201-214.  Linde, Carter and Browning assert that any contact they had with Valley's suppliers was justified as a competitor of Valley.

To prevail on its claim for intentional interference with business relations, Valley must demonstrate (1) the existence of a business relation; (2) Linde's knowledge of the business relation; (3) intentional interference by Linde with the

---

[11]Linde has not sought summary judgment on Count III of Posey's counterclaim, Breach of Lease Agreement.  Therefore, this claim remains pending for trial.

business relation; (4) absence of justification for the interference; and (5) damage to Valley as a result of Linde's interference. *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 453 (Ala.2004) (quoting *Awtrey Realty Co.,* 827 So.2d 104, 108-09 (Ala.2001)). Regarding the element of absence of justification, the Alabama Supreme Court has stated:

> Justification has been recognized both as an element to be proved by the plaintiff and as an affirmative defense to be pleaded and proved by the defendant. Compare *Awtrey Realty,* supra, and *Pakruda v. Cross,* 669 So.2d 907, 909 (Ala.Civ.App.1995); *BellSouth Mobility, Inc. v. Cellulink, Inc.,* 814 So.2d 203 (Ala.2001). As we noted in *BellSouth Mobility,* ' "it is illogical to continue to list an absence of justification as one of the elements of the plaintiff's cause of action and then to place the burden on the defendant to disprove it." ' 814 So.2d at 212 n. 5, quoting *Century 21 Academy Realty, Inc. v. Breland,* 571 So.2d 296, 298 (Ala.1990).
>
> We agree with the language quoted in *BellSouth Mobility.* We reiterate that justification for interference with contractual or business relations is an affirmative defense to be pleaded and proved by the defendant.

*Tom's Foods, Inc.,* 896 So.2d at 453 -454.

The Alabama Supreme Court has further stated:

> This Court has adopted the tort of tortious interference with business relations, based on § 767, *Restatement (Second) of Torts* (1977). See *Gross v. Lowder Realty Better Homes & Gardens,* 494 So.2d 590 (Ala.1986). A companion doctrine to the tort of interference with business relations is the "competitor's privilege." Section 768, *Restatement (Second) of Torts,* states:
>
>> "One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue in an existing contract

23

terminable at will does not interfere improperly with the other's relation if

"(a) the relation concerns a matter involved in the competition between the actor and the other, and

"(b) the actor does not employ wrongful means and

"(c) his action does not create or continue an unlawful restraint of trade and

"(d) his purpose is at least in part to advance his interest in competing with the other.

Comment b to § 768 states:

"The rule stated in this Section is a special application of the factors determining whether an interference is improper or not, as stated in § 767. One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services."

....

"The rule stated in this Section rests on the belief that competition is a necessary or desirable incident of free enterprise. Superiority of power in the matters relating to competition is believed to flow from superiority in efficiency and service. If the actor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purpose for which competition is encouraged."

*Soap Co. v. Ecolab, Inc.*, 646 So.2d 1366, 1369-1370 (Ala.1994).  *See also Tom's*

*Foods,* 896 So.2d at 453-454.

Because Posey owned the building out of which Linde operated, upon Posey's resignation, Carter told Browning to contact Linde's suppliers to let them know Linde would be moving from its current location. Browning depo. at 29. Carter also instructed Browning to tell key suppliers that Linde would continue to support their products and ask them to continue to support Linde. Carter depo. at 99, 101; Browning depo. at 29, 43. Blount also contacted potential suppliers of Valley but did not ask them not to do business with Valley. Blount depo. at 200-205.

Carter told Posey that if he became a distributor for another company, Linde would "do everything – everything we can do to keep you from being successful." Posey depo. at 93. Carter admits telling Posey that if he left, "it would be my job to make it as difficult as possible on [you]." Carter depo. at 83-84. Blount told Griffin that Linde "had a million dollars to keep [Posey] out of business." Griffin depo. at 127-128.

Griffin testified that he tried to set up an account with Tregakiss as a supplier for Valley Air. Griffin depo. at 102-103. He informed Tregakiss he had a customer who wanted to purchase their products through Valley, but Tregakiss refused to set up an account for Valley. *Id.*, at 103-105. Tregakiss informed Griffin that it did not want to make Linde angry and stated that Brad Stephens from Linde had called and said Valley would not "make it" in business. *Id.* A salesperson for another supplier

25

told Griffin that Browning, from Linde, had called about whether they would do business with Valley. *Id*., at 106-107. Browning said he asked one company if it would continue to be selective about distribution of its products, but did not mention Posey or Valley by name. Browning depo. at 32-34.

ORS Nasco was a supplier of Linde. It was also a "primary vendor" for Independent Distributor Cooperative ("IDC") which is a buying cooperative made up of small and midsize distributors. Posey depo. at 199; Loos depo. at 8.[12] Valley became a member of the IDC in August 2005. Kortus depo. at 8. The IDC contracts with vendors such as ORS Nasco to increase the buying power of small distributors. Carter depo. at 102. Receiving a designation of "primary vendor" requires a vendor to sell to any and all credit-worthy members of the IDC. Kortus depo. at 9-10; Loos depo. at 9, 26. Posey called ORS Nasco at the beginning of August and was told Nasco would supply Valley. Posey depo. at 209. Browning contacting ORS Nasco in the fall of 2005 and asked ORS Nasco not to sell to Valley. Loos depo. at 13-14. Browning told Loos that Posey had broken his non-compete agreement. *Id.*, at 14, 21-22. Browning denies ever mentioning Posey or Valley by name to Loos. Browning depo. at 36-38.

---

[12]Craig Loos is Executive Vice President of Sales Development for ORS Nasco. Loos depo. at 6.

Posey contacted IDC to determine why ORS Nasco, as a primary vendor, was not selling to Valley. Posey depo. at 209-210. In turn, Brent Kortus, an independent contractor for IDC contacted Craig Loos of ORS Nasco to remind him of ORS Nasco's obligation to sell to all IDC members. Kortus depo. at 12; Loos depo. at 17-18, 31.

Valley asserts that Linde's calls to ORS Nasco and other suppliers have caused damage to Valley. *See* declaration of Posey, submitted as exhibit 2 to Posey's evidentiary submissions in opposition (doc. 83). Linde asserts that it did not intentionally interfere with Valley's business relations with its suppliers. Linde further asserts that even if its actions could be considered interference, it was justified in doing so based on its need to compete in the marketplace. Linde's brief in support of summary judgment, at 20.

In *Dunnivant v. Bi-State Auto Parts*, 851 F.2d 1575 (11th Cir.1988), the Eleventh Circuit Court of Appeals recognized that "in Alabama, a defendant will not be liable [for tortious interference with business relations] where it acted for legitimate economic reasons. Bona fide business competition is a justification for intentional interference with a competitor's business." *Dunnivant*, 851 F.2d at 1583-1584; citing *Griese-Traylor Corp. v. First National Bank of Birmingham,* 572 F.2d 1039 (5th Cir.1978). In *Beasley-Bennett Electric Co. v. Gulf Coast Chapter of*

27

*National Electrical Contractors Assn.,* 273 Ala. 32, 134 So.2d 427 (Ala.1961),  the plaintiff asserted unlawful interference with his business relations where defendant/contractors refused to do business with the plaintiff and told other construction companies that if they accepted bids from the plaintiff, the defendants would not give any bids to these companies in the future. The Alabama Supreme Court held that these allegations were insufficient. *Beasley-Bennett Electric Co.,* 134 So.2d at 429.  The court added that "[c]ompetition in business, even though carried to the extent of ruining a rival, constitutes justifiable interference in another's business relations, and is not actionable····" *Beasley,* 134 So.2d at 429; *see, e.g., Battles v. San Ann Service, Inc.,* 441 So.2d 925, 928 (Ala.Civ.App.1983).

However, the court finds a genuine issue of material fact concerning whether Linde's actions go beyond competition in business.  In at least one case, Linde asked one of its suppliers to ignore its contractual obligation to supply Valley, as a member of IDC.  ORS Nasco's contract with IDC had a set length to it and was not terminable at will.  According to Loos, Browning specifically requested ORS Nasco not to sell to Valley.  Loos depo. at 17-18.  While Browning claims this conversation never took place, the court finds this issue to be one of material fact and inappropriate for summary judgment.

28

Having considered the foregoing, and being of the opinion that genuine issues of material fact remain and that summary judgment is inappropriate on this cause of action, Valley's claim of intentional interference with business relations against Linde, Carter and Browning remains set for trial.

## CONCLUSION

The court having considered the foregoing, finds as follows:

1.  Posey's motion for summary judgment on Linde's claim for breach of contract not to solicit employees is **DENIED**.

2.  Posey's motion for summary judgment on Linde's claim for breach of contract not to disclose confidential information is **GRANTED**.

3.  Posey's motion for summary judgment on Linde's claim for breach of duty of loyalty is **GRANTED**.

4.  Posey's motion for summary judgment on Linde's claim for intentional interference with business relations is **GRANTED**.

5.  Linde's motion for summary judgment on Posey's counterclaims against Linde for breach of contract and for violation of the Alabama Sales Representative's Commission Contracts Act is **GRANTED**.

6.  Linde's motion for summary judgment on Valley's claim for intentional interference with business relations is **DENIED**.

7.  Posey's counterclaim against Linde for breach of lease agreement remains

pending.

**DONE** and **ORDERED** this the 31st day of May, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE